May it please the Court, Mark Pricewolf for Appellant Ms. Genov. We firmly acknowledge and recognize that the law of this circuit is that a tax transcript is presumptive evidence that a tax assessment is valid. And that to overcome that presumption, the taxpayer must, has the burden to present contrary evidence. We're not here today to attempt to change a Ninth Circuit law or to ask this Court to disregard it. We have a very strange set of facts here. And on those strange set of facts, we believe there's four categories of evidence from which a rational trier of fact could conclude that the assessment was invalid. And that, in fact, this is a question for a rational trier of fact. When you say reach that conclusion, you mean at least that there is evidence that sufficient to challenge the presumption to make it a controverted issue of fact. Yes, Your Honor. At the least. Yes, Your Honor. So for summary judgment purposes, you're saying we should treat a presumption sort of like a fact, like any other fact, right? I believe I understand your question. Yes, yes, Your Honor. It's a fact that can be rebutted. And here, Ms. Genov rebutted that with four categories of evidence. First of all, the fact that on three separate occasions, the government came forward and said they would produce the documents underlying the assessments. And on all of those occasions, though, the government failed to present the assessments. This is an instance where they say they were going to do it, but they didn't. And most importantly, they never told Ms. Genov or anybody to date why. That alone is sufficient to raise some sort of suspicion that we don't know what's going on with this assessment, that there's a genuine issue of material fact as to whether this assessment was validly issued. So raising a suspicion is the same as rebutting a presumption. And that's all you have to do is raise a suspicion. In other words, if the government lawyer had never said all these things, I agree he says that. He says, well, I have it. I'll send it to you. And he told the court, right? We have it.  So if the government lawyer had not said that, the presumption would still be effective, right? Yeah. And, in fact, that's a very different case. And that's an important distinction to make with this case. The situation you're describing is not unlike Coff where there were no representations made by the government that, yes, we will give you the assessment. It was merely a taxpayer asking for it. The government didn't turn it over. And this Court clearly said there's a presumption here that the tax transcripts on its face create a presumption of validity. And merely asking for it doesn't overcome that presumption. But here we don't just have Ms. Genova asking. We have on three separate occasions the government proactively coming forward and saying, yes, I will give it to you. I wouldn't know if I'd say proactively coming forward. Oh, in response. Fending off the request by saying, yeah, I'll give it to you. Fair enough, Judge Clifton. It seems to me the real problem here, and it may be peering behind the presumption, but it's the dog that doesn't bark. The context of this case is that your client stipulated to owing the money. And if they can produce this paper that demonstrates the assessment was timely made, it's over. Absolutely, Judge Clifton. And it's fine with me. I'm happy to have an easy case. But the government didn't produce that piece of paper. And you're hoping that we will draw from the failure to produce sufficient concern that we'll say, okay, there's a genuine issue of fact there. But then we run into the presumption, which Judge Tshishima referred to and which you've acknowledged, doesn't that basically say that the wind's blowing in their favor, even without producing the paper, and you have to do something contrary to that. And you're looking for what you can to find something contrary to that. But in the end, it's all about the same thing. The paper has never been produced. Yes, Your Honor. I mean, I believe the key distinction is not just that the paper has been produced and has not been produced and we have asked for it. It's that the government came forward and through their action of saying we will provide it to you, some inference can be drawn that a jury is entitled to hear. But there are really three other categories of evidence, too, from which rational trier of fact could conclude that there's a genuine issue here as to the validity of the assessments. On three separate occasions, the government issued tax refunds to Ms. Jeneff, not the most recent of which was a couple months ago. And the significance of that is with at least the refunds in 2009 and 2010, they came with a note that said we will not issue you any refund if you owe us money. So two inferences can be made from that. What was the government's explanation for that happening? That's a great question, Judge Tashima. And that kind of transitions me into the third point. Number three. Yeah. Point number three is that their explanation is befuddling, frankly. It doesn't make any sense. The explanation was that it was an error. The — Computer error? It was a computer error, but it was more specific than that. It was computer error because in the transcript we meant to extend the statute of limitations for a collection statute. Well, first of all, I'm not sure how extending the statute of limitations on a collection statute would lead to the allowance of a refund. That still has never been explained. Number two, let's — if you actually look at the transcript on November 2, 2009, where the government says this collection statute was noted, it doesn't say that. It says legal suit pending. The problem with that — at least two problems with that. Most importantly, there was no legal suit pending against Ms. Genoff, nor was she in any litigation with the government. But secondly, I don't understand how the notation legal suit pending would actually allow for a refund. I mean, all of this goes to the point that if this information is put in front of a jury, I think there's a fair question there that they'll wonder, you know, there are all these other problems with this tax transcript that the government is asking us to rely on solely just this tax transcript. Maybe it's just not as accurate as the government portends it to be. And at the very least, this evidence overcomes the presumption, and it's contrary evidence that the assessment is valid. See, here's the primary problem I have with your position, not that I'm not sympathetic to it, but on this summary judgment appeal, it's very similar to a credibility issue. And, you know, one of the problems I've always thought about with summary judgment is you really can't test credibility. In other words, if the opponent's — the other side says, yes, X, Y, Z, it happened, and you know that person's lying, you still, for summary judgment, have to accept that representation is true to test whether there's a contrary issue effect. And a presumption is almost the same thing. You know, I mean, when you attack presumption, it's like attacking credibility. And there aren't too many cases on this, are there, in summary judgment context. So I have a hard time deciding, you know, how to approach your case. Well, maybe I can help you with that, Your Honor. I see the quandary that you bring up, Judge Tashima, and I think that the best way, you know, we obviously afford all sort of reasonable inferences to the nonmoving party. And I guess that's kind of my point, is your quandary, is that this is something, an issue of credibility that should at least, at the very least, be put in front of the jury. There are so many odd circumstances going on with this transcript and with these assessments that it should be for a jury to determine, hmm, I'm not sure these are valid. And it's not as a matter of law that this transcript alone should carry the day. And with that, if it's okay, I'd like to reserve my time. You may. Thank you. May it please the Court. I'm Terry Milton for the government. And I'd like to address these four pieces of evidence, which I think is a loose characterization of what is really pretty much sheer conjecture on the part of the taxpayer here. I suppose you're going to reach into your bag and pull out the magic piece of paper that solves the problem. Well, I do want to say this about the magic piece of paper. In the district court, to straighten out the sequence of events, taxpayers' counsel, prior counsel, had asked the IRS for proof of the assessments. And the only evidence as to what was happening at that stage was that an IRS employee said that he would obtain copies of the transcripts, which is what they routinely provide to taxpayers. And this Court has said that that complies with the burden on the IRS to establish an assessment. So the IRS employee said he would do it. Establish it prima facie, but not irreparably. Well, that's true. But that is what the IRS employee was intending to produce, because that's what they routinely do produce. Now, he didn't ultimately produce it. Why hasn't the IRS produced the assessment? In the district court proceedings, our trial counsel, I was not trial counsel, but he offered to produce the document. Why hasn't the IRS produced the assessment? Well, the district court issued the opinion saying that it wasn't necessary for the government to produce it. Otherwise, you would be willing to produce the assessment? We were willing to attempt it at the trial level, but why didn't you produce it up until the time that the district court asked for it? Well, no one had asked for it until we initiated this lawsuit to collect these taxes. It was a dormant issue from the time that the taxpayers' prior counsel requested it, didn't get it, stopped pursuing it with the IRS, until the time we filed a lawsuit against the taxpayer. It is. In your preparation when you took over this appeal and getting ready for this argument, I mean, have you ascertained whether or not the assessment exists? I mean, can you produce it right now? No, sir. Have you looked into it? I have talked to the man who provided an affidavit about questions relating to computer code. I have not tried to obtain the assessment. Without getting into any conversation with your clients. I understand. I mean, you don't have a certain position right now as to whether the IRS can produce that or not? That being the assessment? I personally have not tried to produce it. As I said, our trial counsel said he would look for it. Do you have any knowledge as to whether or not the IRS can produce it? No, sir. I have no knowledge, no personal knowledge of that. So it's not possible for the IRS, or you don't know if it's possible? I don't know if it's possible. I presume that it is possible, as a matter of fact. I presume that their records would contain the document that I think the taxpayer is looking for, which is the document that was in prior times known as a Form 23-C, and now it has another name. And do you have any knowledge as to how much time or effort it would take to produce the assessment? I do not. This is unusual. See, this may be spilt milk, but it is unusual. This whole case goes away if the piece of paper turns up, because taxpayers' counsel are smart enough to realize that even if they'd win on appeal, they'd go back to district court and get a summary judgment entered in favor of the government if, in fact, this issue went away. And so it would be useful for everybody's purposes, even if it's well outside the time of the case before the district court, for that piece of paper to appear. It would be useful if that piece of paper appeared tomorrow. It would save us the trouble of writing up a result from this and possibly the district court having to deal with this again. So I understand you approach this case as an appellate project, but the big picture kind of screams out. If we knew the dog barked, we wouldn't be here and have anything to deal with, would we? No, Your Honor. If there were a magic piece of paper, going back to that concept, if I had produced that magic piece of paper and had attempted to supplement the record with it and encountered no objection to that, then we wouldn't have a case any longer, I presume. Another issue, however, is that there is not a single magic piece of paper that would solve the controversy here. I refer to this Form 23-C, which is what taxpayers always focus on because that's what the assessment date is called. It's called the Form 23-C date. What that document is is a summary record of all the assessments that are entered by a service center on a particular date. It's described in the Hess opinion that the taxpayers rely on. And in the description, it reflects the fact that you don't see the taxpayer's name or amount of money or anything else on that Form 23-C. It's a summary record. So that's what the taxpayer wants to see, and it will not actually satisfy the questions being asked in this case because it's a summary document, not a personal document. Then there might be, there would be potentially a handwritten document that was a request for assessment. Some requests for assessment are generated by computer, so there wouldn't be a piece of paper for that. So every situation is different in terms of what you're looking for as an underlying document for assessment. All right. Then let's, you know, get to the question before us now. Why, I guess this is your position, why isn't there sufficient evidence produced by the defendants to raise a controverted issue of fact as to whether or not, you know, assessment was timely made? Your Honor, my position would be that there has been no evidence offered by the taxpayer in this case. They characterize conversations between prior counsel and an IRS agent somewhat incorrectly, in my view. All the IRS ever promised to produce was a transcript. The transcripts are in the record. They claim that the IRS promised to produce something and never did. I know that. That's not true. On summary judgment, we have to accept that as true, don't we? Accept which is true? I'm sorry. The plaintiff's representation as to what happened. All they can represent is that they can't come here and say, well, what the plaintiff said is not true. I mean, that's not summary judgment. Your Honor, they base their representation on what their prior counsel understood he was asking for. He said he asked for the underlying documents. In the record is the IRS agent's response that he would produce transcripts. So the evidence is somebody's after-the-fact testimony that he thought he was going to get some paperwork, and the actual record that shows what the IRS was going to give him was a transcript. Well, that combined with three refund checks, how do you explain that? I'm sorry. That combined with the gen-ob receiving three refund checks, how do you explain that? Well, the record does contain the explanation that has been offered by an IRS employee with expertise in the computer system, that there's a code entry that has caused the problem. And the code entry relates to this fact, which can't be changed. The taxes at issue here arise out of joint returns that were filed by the taxpayer and her now-deceased husband. Those returns are stored under his Social Security number primarily. It's much in the news that the IRS's computer systems are outmoded and overloaded. Her individual tax returns are stored under her Social Security number. The IRS's computer system is not marrying up the fact that she owes money for joint return years stored under her husband's Social Security number, and the IRS owes her money for years where she has overpaid her taxes. It's been explained in the record, and it's not so hard to understand why a mistake like it, if you call it a mistake. I mean, just what you characterized right there, I mean, doesn't that create a question of material fact? Well, Your Honor, the most that could happen, if the court were to send it back, is that the IRS employee who's offered his affidavit could come to court and explain in great detail how the computer system works. And perhaps that's desirable, but it seems — And then wouldn't a jury get to choose then whether they believe the IRS agent or whether or not the fact that they received refund checks that specifically state you're not going to get any money if you owe anything, and then make a determination? I mean, just that alone, it seems like, might create a question of material fact. On top of the representations that were made by the IRS that they would produce some document, whether it's transcript or accept the assertion of Ms. Jenoff that it was more than that, just trying to figure out how you get around how it doesn't meet the presumption or create a question of material fact. Well, Your Honor, I would look at it as an established fact that she got the refunds. And I view the evidence that was put into the record by our trial counsel as adequate to explain how she got the refunds. It doesn't suggest that she didn't owe the taxes, nor does she claim that she didn't owe the taxes. It calls into question, though, the taxes. Doesn't it call into question the taxes? I mean, when you get three refund checks after, you know, been told, you know, you owe and you're not going to get any money if you – I mean, doesn't it call into question whether or not she actually owes and what the amount is? Your Honor, I believe the record explains why it would have happened. When she owed taxes, she might still get a refund. Among other things, the statute 6402 that allows for an offset is discretionary. I mean, I do not understand, and as a taxpayer, I would think it's unfortunate to be sending a taxpayer money at the same time the taxpayer owes the government money. But it is a discretionary thing whether the IRS issues a refund, even when other taxes are owing. And the record establishes how it happened in this case, in our view, so that there is no question that suggests that there's not a valid assessment that the IRS was attempting to collect when the government filed this suit. But the question it raises, you know, all these matters raised by Judge McGee is, if the taxpayer gets a form that says, well, you have a refund coming for X year or something, but you won't get any money if you owe all the taxes, and then they get the money, it raises a question of whether or not, you know, the computer system is working properly, right? Don't you think? And so, you know, it makes it difficult for the IRS to rely on the regularity of its computer processing program to say everything is the way it should be in this case. I mean, that's the issue of fact that's raised, isn't it? Again, Your Honor, I view the evidence as sufficient to explain how it happened. Well, that's one explanation, but not necessarily the only explanation. Apparently, it's not a persuasive explanation, as a matter of fact, but the record does explain it. Well, Your Honor, you're correct. It is a matter of record at this point. The IRS has offered the explanation as to what happened. It can offer a fuller explanation on remand if that were to be required, but in our view, the evidence was sufficient to support the valid making of assessments in this case, and the collection should proceed. Your Honor, I don't believe there is. A person could appear as opposed to offering the evidence by affidavit, but that is about what would happen. How about the assessment? Could we? I mean, that would be one other piece of evidence, the assessment. And presumably more paperwork would be generated if there were a remand. Thank you. Mr. Wolf, I think you've got about a minute left. Unless the panel has any further questions. Your Honor? Well, I have one question. Suppose you were to remand this case, though. What other evidence do you have to deduce? Well, I think we would explore. I mean, I think as you brought up, credibility is an issue here, the government's credibility, the credibility of the documents, and I think we could explore that through Mr. Norris, among one who gave the declaration for the government. The assessment, as Judge McGeough aptly pointed out, would be nice to see if it's there. And another argument that we definitely explore more on remand would be this document locator number that we brought up in our briefing, which simply does not seem to add up to the date that the government alleges as the date of the assessment. And I think that's pretty strong evidence, another piece of strong evidence, that there's a tribal issue. The fact that this assessment, the 1996 assessment, actually is not valid. Okay. Thank you. We thank both counsel for your argument. The case just argued is submitted.
judges: Tashima, Clifton, Murguia